IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

JOANN E. WALL                                                                                    PLAINTIFF

V.                              Civil No. 2:14-cv-2218-MEF

CAROLYN W. COLVIN, Commissioner
Social Security Administration                                                           DEFENDANT

**MEMORANDUM OPINION**

Plaintiff, Joann Wall, brings this action under 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of the Social Security Administration (Commissioner) denying her claims for a period of disability, disability insurance benefits ("DIB"), and supplemental security income ("SSI") under Titles II and XVI of the Social Security Act (hereinafter "the Act"), 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  In this judicial review, the court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision.  *See* 42 U.S.C. § 405(g).

**I.      Procedural Background:**

Plaintiff filed her applications for DIB and SSI on March 27, 2012, alleging an onset date of December 31, 2010, due to diabetes, high blood pressure, chronic asthma, failing vision, edema, and chronic back pain.  Tr. 135-145, 178.  The Commissioner denied her applications initially and on reconsideration.  Tr. 72-82.  An Administrative Law Judge ("ALJ") held an administrative hearing on April 22, 2013.  Tr. 31-71.  Plaintiff was present and represented by counsel.

At this time, she was 45 years old and possessed an eleventh grade education. Tr. 35-37. She had past relevant work ("PRW") experience as a poultry eviscerator, hand packager, poultry inspector, production worker in plastic, poultry deboner, home health aide, and quality control technician. Tr. 22.

On August 9, 2013, the ALJ found that the Plaintiff's obesity, diabetes mellitus, degenerative disk disease, osteoarthritis of the lumbar spine, asthma, and hypertension were severe, but did not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4. Tr. 16-18. After partially discrediting her subjective complaints, the ALJ determined that she retained the residual functional capacity ("RFC") to perform sedentary work,

> except that due to the combination of her impairments, she should never climb, ladders, ropes or scaffolds. She can occasionally climb ramps/stairs, balance, stoop, kneel, crouch and crawl. She should avoid concentrated exposure to temperature extremes, wetness, humidity, fumes, odors, dusts, gases, poor ventilation and hazards.

Tr. 18. The ALJ then concluded the Plaintiff could perform work as a production lens inserter and cashier II. Tr. 23.

The Appeals Council denied the Plaintiff's request for review on August 21, 2014. Tr. 1-7. Subsequently, Plaintiff filed this action. ECF No. 1. This case is before the undersigned by consent of the parties. Both parties have filed appeal briefs, and the case is now ready for decision. ECF Nos. 9, 10.

**II.     Applicable Law:**

This Court's role is to determine whether substantial evidence supports the Commissioner's findings. *Vossen v. Astrue*, 612 F.3d 1011, 1015 (8th Cir. 2010). Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it

adequate to support the Commissioner's decision.  *Teague v. Astrue*, 638 F.3d 611, 614 (8th Cir. 2011).  We must affirm the ALJ's decision if the record contains substantial evidence to support it.  *Blackburn v. Colvin,* 761 F.3d 853, 858 (8th Cir. 2014).  As long as there is substantial evidence in the record that supports the Commissioner's decision, the court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the court would have decided the case differently.  *Miller v. Colvin*, 784 F.3d 472, 477 (8th Cir. 2015).  In other words, if after reviewing the record it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, we must affirm the ALJ's decision.  *Id*.

A claimant for Social Security disability benefits has the burden of proving his disability by establishing a physical or mental disability that has lasted at least one year and that prevents him from engaging in any substantial gainful activity.  *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); *see also* 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."  42 U.S.C. §§ 423(d)(3), 1382(3)(c).  A Plaintiff must show that his or her disability, not simply their impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require her to apply a five-step sequential evaluation process to each claim for disability benefits:  (1) whether the claimant has engaged in substantial gainful activity since filing his or her claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s)

3

prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given his or her age, education, and experience. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).  Only if he reaches the final stage does the fact finder consider the Plaintiff's age, education, and work experience in light of his or her residual functional capacity.  *See McCoy v. Schweiker*, 683 F.2d 1138, 1141-42 (8th Cir. 1982) (en banc) (abrogated on other grounds); 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

### III.  Discussion:

Plaintiff raises the following issues on appeal:  1) whether the ALJ properly determined the Plaintiff's severe impairments; 2) whether the ALJ's RFC assessment is consistent with the record; and, 3) whether the vocational expert's ("VE") testimony constitutes substantial evidence to support the ALJ's conclusion that the Plaintiff can perform work that exists in significant numbers in the national economy.

The Court has reviewed the entire transcript.  The complete set of facts and arguments are presented in the parties' briefs and the ALJ's opinion, and they are repeated here only to the extent necessary.

#### A.  Severe Impairments:

The Plaintiff alleges that the ALJ erred in concluding that her peripheral neuropathy and depression/anxiety were non-severe impairments.  We disagree.  At step two, a claimant has the burden of providing evidence of functional limitations in support of their contention of disability.  *Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007). "An impairment is not severe if it amounts only to a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities." *Id.* (citing *Bowen v. Yuckert*, 482 U.S. 137, 153 (1987); 20 C.F.R. § 404.1521(a)).  "If the impairment would have no more than a

minimal effect on the claimant's ability to work, then it does not satisfy the requirement of step two." *Id.* (citing *Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007)).

Plaintiff contends that her peripheral neuropathy is severe and limits her ability to perform work-related activities. However, the record does not support this assertion. The Plaintiff was diagnosed with diabetes in March 2012, at which time she was found to have diabetic ketoacidosis with a blood sugar level over 800. Tr. 251-252. Doctors prescribed Glimepiride and Metformin. Over time, her condition improved. Tr. 400-406. By August 30, 2012, she had lost 70 pounds and her HgA1c level was within the normal range. At this time, Catherine Mustain, physician's assistant for Dr. Kelli Rippy, discontinued the Glimipride and cut her Metformin dosage in half. Tr. 421. On August 31, 2012, Dr. Michael Cole diagnosed her with controlled diabetes. Tr. 407-413. Her diabetes remained controlled throughout the remainder of the relevant time period. Tr. 562-576.

On March 29, 2013, the Plaintiff reported some mild neuropathy and Dr. Cole diagnosed her with acute peripheral neuropathy. Tr. 569-576. This was the first and only time the Plaintiff was diagnosed with neuropathy. *See Trenary v. Bowen*, 898F.2d 1361, 1364 (8th Cir. 1990) (noting a mere diagnosis is not sufficient to prove disability, absent some evidence to establish a functional loss resulting from that diagnosis). Thus, we do not find her neuropathy to be severe. However, even if it were, we note that the ALJ accounted for her neuropathy when he concluded she could perform sedentary work, which by definition involves limited standing and walking.

The Plaintiff also takes issue with the ALJ's determination that her anxiety and depression were non-severe. Initially, we note that the Plaintiff did not allege disability based on anxiety or depression. Tr. 178, 195-196, 202-203. Moreover, when questioned by her

attorney at the administrative hearing, the Plaintiff listed back pain, swollen knees, obesity, breathing problems, and diabetes as the cause of her disability. Tr. 51-54. Her only mention of mental impairments was when the she testified that her doctor was "really good" and took time to speak to her about her problems and feelings, including her depression and anxiety. Tr. 69. *See Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007) (ALJ properly found no severe mental impairments when claimant did not allege mental impairment in her disability application); *Box v. Shalala*, 52 F.3d 168, 171 (8th Cir. 1995) (obesity was not a severe impairment when the claimant did not allege in application or at hearing that obesity was disabling).

The medical evidence also fails to establish a severe mental impairment. Although Dr. Cole diagnosed her with depression and anxiety and prescribed Alprazolam, her condition was responsive to medication. *Patrick v. Barnhart*, 323 F.3d 592, 596 (8th Cir. 2003) (holding if an impairment can be controlled by treatment or medication, it cannot be considered disabling). The majority of her treatment records document a normal affect with no signs of anxiety or mood swings. Tr. 283-287, 294-303, 314-330, 400-406, 419-421, 569-576, 578-591.

We are cognizant of Dr. Patricia Walz's consultative exam resulting in diagnoses of dysthymia, panic disorder without agoraphobia, and dependent personality traits and assessing her with fair attention and concentration and slower information processing. However, Dr. Walz also found no significant impairment in her adaptive functioning or ability to perform activities of daily living and assigned her a global assessment of functioning ("GAF") score of 60 to 65. Tr, 376-381. A GAF score in this range is indicative of only mild symptomology and mild disturbance in functioning. *See* DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS IV-TR 34 (4th ed. 2000).

The Plaintiff also failed to seek out professional mental health treatment, signaling that her symptoms were not as limiting as alleged. *See Kirby v. Astrue*, 500 F.3d 705, 709 (8th Cir. 2007) (lack of formal treatment by a psychiatrist, psychologist, or other mental health professional is a significant consideration when evaluating Plaintiff's allegations of disability due to a mental impairment). Although she contends that her failure to seek out mental health treatment was due to financial hardship, we can find no evidence to indicate that she was denied mental health treatment due to her finances or that she attempted to avail herself of the free and/or reduced cost mental health services offered to the uninsured and underinsured individuals in her community. *Goff v. Barnhart*, 421 F.3d 785, 793 (8th Cir. 2005). As such, we do not find her financial hardship excuses her failure to seek out treatment. And, although the Plaintiff did have diagnoses of anxiety and depression, the evidence does not support a finding of severe.

    **B.**    **RFC:**

The Plaintiff also takes issue with the ALJ's RFC determination, arguing that the ALJ erred in failing to give greater weight to Dr. Cole's treating source statement. RFC is the most a person can do despite that person's limitations. 20 C.F.R. §§ 404.1545, 416.945. "The ALJ determines a claimant's RFC based on all relevant evidence in the record, including medical records, observations of treating physicians and others, and the claimant's own descriptions of his or her limitations." *Jones v. Astrue*, 619 F.3d 963, 971 (8th Cir. 2010); *Davidson v. Astrue*, 578 F.3d 838, 844 (8th Cir. 2009). The United States Court of Appeals for the Eighth Circuit has held that a "claimant's residual functional capacity is a medical question." *Miller v. Colvin*, 784 F.3d 472, 479 (8th Cir. 2015) (citing *Lauer v. Apfel,* 245 F.3d 700, 704 (8th Cir. 2001). Therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical

evidence that addresses the claimant's ability to function in the workplace. *Perks v. Astrue*, 687 F.3d 1086, 1092 (8th Cir. 2012).

Under the social security regulations, the Commissioner will generally give a treating physician's opinion on the issue of the nature and severity of a Plaintiff's impairments "controlling weight" when it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 416.927(d)(2)3; *see also Cline v. Colvin*, 771 F.3d 1098, 1103 (8th Cir. 2014). Yet such weight is neither inherent nor automatic and does not "obviate the need to evaluate the record as whole." *Hacker v. Barnhart,* 459 F.3d 934, 937 (8th Cir. 2006); *Hogan v. Apfel,* 239 F.3d 958, 961 (8th Cir. 2001). The Commissioner "'may discount or even disregard the opinion of a treating physician where other medical assessments are supported by better or more thorough medical evidence, or where a treating physician renders inconsistent opinions that undermine the credibility of such opinions.'" *Anderson v. Astrue,* 696 F.3d 790, 793 (8th Cir. 2012) (quoting *Wildman v. Astrue,* 596 F.3d 959, 964 (8th Cir. 2010)); *accord Hacker,* 459 F.3d at 937 (declining to give controlling weight to treating physician's opinion because treatment notes were inconsistent with her assessment).

Dr. Cole completed a medical source statement in August 2012, indicating the Plaintiff could lift and carry less than 10 pounds frequently and 10 pounds occasionally; stand/walk less than 2 hours per day; and, sit less than 6 hours per day. Tr. 425-427. He also opined that the Plaintiff would need to alternate sitting and standing; would have a limited ability to push and pull; could never climb, balance, kneel, crouch, or crawl; would require limited exposure to temperature extremes, noise, dust, vibration, humidity/wetness, hazards such as machinery and

heights, fumes, odors, chemicals, and gases.  The ALJ acknowledged Dr. Cole's assessment, but did not give it significant weight because he did not find support for it in the record.

Although the Plaintiff did suffer from low back and knee pain, x-rays showed only minimal diffuse degenerative disk disease with small osteophytes.  Tr. 352.  Physical exams were essentially normal, revealing only mild tenderness, occasional range of motion deficits, and a "waddling" gait.  Tr. 294-298, 562-576, 585-591.  Based on this evidence, the ALJ found no evidence to support the postural limitations imposed by Dr. Cole, and we agree.  Dr. Cole did advise the Plaintiff to elevate her feet when swollen.  However, until competing the medical source statement, he never limited her with regard to sitting for extended periods or advised her to alternate between sitting and standing.  We can also find no evidence that the Plaintiff reported problems associated with prolonged sitting, although she did report that being on her feet for prolonged periods exacerbated her pain.  As such, we find substantial support for the ALJ's inclusion of occasional postural limitations and no sitting restrictions.

The Plaintiff also suffered from edema in her lower extremities, hypertension, diabetes, and obesity.  However, each of these conditions was responsive to treatment via diet, exercise, and medication.  Unfortunately, the Plaintiff was not always compliant with treatment.  Dr. Cole rated her compliance with diet, exercise, and follow-up to be fair, at best.  Tr. 288-292, 299-303, 314-330, 407-413, 569-576.  *See Wagner v. Astrue*, 499 F.3d 842, 851 (8th Cir. 2007) (a failure to follow a recommended course of treatment weighs against credibility).  And, we note that diet and exercise play integral roles in the treatment of each of these impairments.

The ALJ's also included environmental limitations in his RFC determination, adequately accounting for the Plaintiff's asthma.  He did not include any mental limitations, but as previously discussed, Dr. Walz found no significant impairment in her adaptive

9

functioning or ability to perform activities of daily living and assessed a GAF score indicative of only mild impairment. Tr. 380. Moreover, her treatment records failed to establish any limitations imposed by her mental impairments, as both were responsive to medication.

The Plaintiff did report some visual changes due to her diabetes. After reviewing the record, these changes appear to have occurred during significant drops and/or rises in her blood sugar levels. Because Dr. Cole made no mention of any limitations associated with these changes and the record reveals that her diabetes was controlled via diet, exercise, and medication, we find no error in the ALJ's failure to include limitations in the RFC assessment. And, as such, we find substantial evidence to support the ALJ's RFC determination.

### C. Vocational Expert's Testimony:

In her final issue, the Plaintiff disputes the VE's testimony that she could perform work that exists in significant numbers in the national economy. She contends that the VE's testimony does not constitute substantial evidence to support her ability to perform these positions because the hypothetical questions posed to the VE by the ALJ did not include all of her limitations. However, "[t]he ALJ's hypothetical question to the vocational expert needs to include only those impairments that the ALJ finds are substantially supported by the record as a whole." *Martise v. Astrue*, 641 F.3d 909, 927 (8th Cir. 2011) (citing *Lacroix v. Barnhart*, 465 F.3d 881, 889 (8th Cir. 2006)). Here, the ALJ's hypothetical question included all the limitations found to exist by the ALJ and set forth in the ALJ's RFC determination. *Id.* Based on our previous conclusion that substantial evidence supports the ALJ's RFC findings, we hold that the hypothetical question was proper, and the VE's answer constituted substantial evidence supporting the Commissioner's denial of benefits. *Id.*, *see also* Lacroix, 465 F.3d at 889.

## IV.     Conclusion:

Having carefully reviewed the record, the undersigned finds substantial evidence supporting the ALJ's decision denying the Plaintiff benefits, and the decision is affirmed. The undersigned further orders that the Plaintiff's Complaint be dismissed with prejudice.

DATED this 8th day of January, 2016.

/s/ Mark E. Ford
HON. MARK E. FORD
UNITED STATES MAGISTRATE JUDGE